**FILED**
7-15-13
JUL 1 5 2013

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

United States of America ex rel.      )

**EARL JOHNSON**      )
(Full name and prison number)      )
(Include name under which convicted)      )

PETITIONER      )
      )      **13 C 5031**
vs.      )      **Judge Elaine E. Bucklo**
      )      **Magistrate Judge Maria Valdez**
**MICHAEL LEMKE**      )
(Warden, Superintendent, or authorized      )
person having custody of petitioner)      )

RESPONDENT, and      )
      )
(Fill in the following blank <u>only</u> if judgment      )
attacked imposes a sentence to commence      )
in the future)      )

ATTORNEY GENERAL OF THE STATE OF      )
      )      Case Number of State Court Conviction:
_____      )
(State where judgment entered)      )      **99 CR 17370**
      )

## PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY

1.  Name and location of court where conviction entered: **IN THE CIRCUIT COURT OF Cook County, 2650 S. California 60608**

2.  Date of judgment of conviction: **JAN 9, 2004**

3.  Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)
**Two Counts of First Degree Murder**

4.  Sentence(s) imposed: **22 yrs For each Count to be served Consecutively**

5.  What was your plea? (Check one)      (A) Not guilty    (**X**)
                            (B) Guilty       (  )
                            (C) Nolo contendere (  )

If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

**N/A**

## PART I – TRIAL AND DIRECT REVIEW

1. Kind of trial: (Check one):     Jury ( )          Judge only (X)

2. Did you testify at trial?     YES ( )          NO     (X)

3. Did you appeal from the conviction or the sentence imposed? YES (X)   NO ( )

   (A) If you appealed, give the

      (1) Name of court: _The Appellate Court of Illinois, First Judicial District_

      (2) Result: _AFFIRMED_

      (3) Date of ruling: _December 9, 2005_

      (4) Issues raised: _The State Provided insufficient evidence that He_
      _Knew His Acts Created a Strong probability of Causing Death or_
      _Great Bodily Harm to the victims, therefore his Conviction should be Reckless_
      _Homicide._

   (B) If you did not appeal, explain briefly why not:
      _N/A_

4. Did you appeal, or seek leave to appeal, to the highest state court?   YES ( )     NO (X)

   (A) If yes, give the

      (1) Result _N/A_

      (2) Date of ruling: _N/A_

      (3) Issues raised: _N/A_

   (B) If no, why not: _____

5. Did you petition the United States Supreme Court for a writ of *certiorari*?   Yes ( )   No (X)

   If yes, give (A) date of petition: _____   (B) date *certiorari* was denied: _____

2

## PART II – COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

   YES (✗)   NO ( )

   With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

   A.   Name of court: *THE Circuit Court of Cook County*

   B.   Date of filing: *October 22, 2007*

   C.   Issues raised: *Johnson was Denied Effective Assistance of trial Counsel, where Counsel Failed to investigate testimony that Detective Knolmayer gave At A July 2000 Deposition for a Civil lawsuit.*

   D.   Did you receive an evidentiary hearing on your petition?   YES ( )   NO (✗)

   E.   What was the court's ruling? *Petition Denied*

   F.   Date of court's ruling: *November 20, 2009*

   G.   Did you appeal from the ruling on your petition?   YES (✗)   NO ( )

   H.   (a) If yes,   (1) what was the result?   *Affirmed*

         (2) date of decision:   *July 31, 2012*

         (b) If no, explain briefly why not:   *N/A*

   I.   Did you appeal, or seek leave to appeal this decision to the highest state court?

         YES (✗)   NO ( )

         (a) If yes,   (1) what was the result?   *Petition Denied*

               (2) date of decision:

         (b) If no, explain briefly why not:   *N/A*

2. With respect to this conviction or sentence, have you filed a petition in a state court using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?      YES ( )      NO (X)

   A.  If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

       1.  Nature of proceeding            N/A

       2.  Date petition filed             N/A

       3.  Ruling on the petition          N/A

       3.  Date of ruling                  N/A

       4.  If you appealed, what was       N/A
           the ruling on appeal?

       5.  Date of ruling on appeal        N/A

       6.  If there was a further appeal,
           what was the ruling?            N/A

       7.  Date of ruling on appeal        N/A

3.  With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in federal court?
YES ( )      NO (X)

   A.   If yes, give name of court, case title and case number:

                                           N/A

   B.   Did the court rule on your petition?  If so, state

        (1)  Ruling:                       N/A

        (2)  Date:           N/A

4.  WITH RESPECT TO THIS CONVICTION OR SENTENCE, ARE THERE LEGAL PROCEEDINGS PENDING IN ANY COURT, OTHER THAN THIS PETITION?

YES ( )      NO (X)

If yes, explain:                           N/A

PART III — PETITIONER'S CLAIMS

1. State briefly every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. You may attach additional pages stating additional grounds and supporting facts. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.

(A) Ground one _____
    Supporting facts (tell your story briefly without citing cases or law):

Whether the State Proved Johnson Guilty Beyond a Reasonable Doubt of First Degree Murder where Johnson's speeding and Driving in and out of the median lane prior to the collision in the intersection Did not create a strong probability of causing Death or Great Bodily Harm to the occupants of the other car, which unexpectedly made a lefthand turn across the street in which Johnson was traveling.                    (Cont. see Exhibit A)

(B) Ground two _____
    Supporting facts:

Petitioner, Earl Johnson was Denied His 6th Amendment Right to an Effective Assistance of Trial Counsel Guaranteed by the United States Constitution (U.S. Const. Amens VI) where Trial Counsel Failed to investigate testimony that Detective Kwolmayer gave at a July 2000 Desposition For a Civil Lawsuit.
                    (Continue see Exhibit B)

(C)  Ground three _____
     Supporting facts:

_____
_____
_____
_____
_____
_____

(D)  Ground four _____
     Supporting facts:

_____
_____
_____
_____
_____
_____

2    Have all grounds raised in this petition been presented to the highest court having jurisdiction?
     YES ( )   NO (X)

3.   If you answered "NO" to question (16), state briefly which _____ were not so presented and why not:

_____
_____        _____

6

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing _DANIEL FRANKS_

(B) At arraignment and plea _DANIEL FRANKS_

(C) At trial _DANIEL FRANKS_

(D) At sentencing _DANIEL FRANKS_

(E) On appeal _ADRIENNE N. RIVER_

(F) In any post-conviction proceeding _DANIEL J. WALSH_

(G) Other (state): _____

## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES (  )   NO (X)

Name and location of the court which imposed the sentence: _N/A_

Date and length of sentence to be served in the future _____

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: _____
        (Date)                                    Signature of attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.

_Earl Johnson_
(Signature of petitioner)
_304540_
(I.D. Number)
_P.O. Box 112 Joliet Il 60434_
(Address)

7

Cont... Ex. A
Exhibit A

The accident in this case occurred in the intersection of 95th Street and McVicker Avenue, the intersection was not controlled by a traffic light or by a stop signal. (R.1. 189; R.11. 286-87, 309-10) McVicker Avenue was seven blocks west of Ridgeland Avenue where Johnson turned east onto 95th Street. (See People's Exhibit No. 10) 95th Street was a six-lane thoroughfare, with three eastbound lanes and three westbound lanes separated by a median lane. The speed limit was 30 miles per hour. The estimates by the witnesses as to the amount of eastbound traffic on 95th Street at the time of the incident ranged from medium to heavy. (R.1. 166, 172, 184; R.11. 309, 312, 332)

Johnson changed lanes on 95th Street very quickly, weaving in and out of traffic, and traveled eastbound at estimated speeds of 60 to over 70 miles per hour. (The trial court rejected the testimony of Buzo that Johnson was traveling between 70 to 90 miles per hour.) (R.11. 333. R.111 498-99) The Pontiac was waiting to make a lefthand turn from westbound 95th Street onto Southbound McVicker Avenue. A van was stopped directly behind the Pontiac while the Pontiac stopped in traffic for about 30 seconds before starting its turn. (R.11. 314) The van driver could see over the top of the Pontiac because his van was higher than the car. As he waited, the van driver observed the Cadillac, at a point two blocks away, leave the eastbound lane and enter the median, driving eastbound and partially straddling the westbound lane next to the median. (R.11. 305-06, 318) The Cadillac had been behind the car of Oscar Buzo in the furthest left eastbound lane but had gone onto the median to pass Buzo. (R.11. 329-31) There were no cars in front of Buzo; there was 150 feet of clear space between Buzo and the Pontiac. (R.11. 334, 339)

The van driver described the Cadillac as coming directly at his van and at the Pontiac in front of him. (R.11. 305, 306, 320) The van driver prepared to hold onto the steering wheel in apparent anticipation for a collision. (R.11. 319) When the Pontiac started to make its lefthand turn, the Cadillac was 50 feet away making a right-hand turn from the

Median to Returned to the Eastbound lanes and enter a clearing in the East-Bound traffic. (R.II. 308-09) The Cadillac had to turn right because westbound traffic was comming. (R.II. 309) Eye-witnesses did not observe Johnson slow down. (R.I. 199, 233; R.II. 313, 331-32, 350, 371) The Cadillac and the Pontiac collided in the intersection after the Pontiac turned left. (R.I. 185, 198; R.II. 309, 10) The initial point of impact was in the middle eastbound lane of 95th Street, and the minimum speed of the Cadillac at impact was 67.81 miles per hour. (R.II. 399, 402, 403) The expert determined that the collision was not truly head on because the damage to the Cadillac was across the front but also pushed off to the right. (R.II. 391)

Johnson's driving did not create a "strong probability" of causing death or great bodily harm, nor was its "natural tendency" to cause death or great bodily harm. Besides speeding at about 68 miles per hour and fleeing from the Police, the only other traffic violations that Johnson committed in the seconds preceding the collision was driving in and out of the median lane in order to pass the vehicle in front of him in the eastbound lane furthest on the left. The collision occurred because the Pontiac unexpectedly turned in front of Johnson's speeding car in an effort to cross 95th Street. The driver of the Pontiac had to check whether there was sufficient opportunity to turn safely as cars traveling eastbound on 95th Street had the right of way. Johnson would have believed that the driver of the Pontiac would have seen, or reasonably should have seen, his vehicle traveling towards her on the median and then traveling back into the eastbound lanes. The driver of the Pontiac had an obstructed view, and the driver of the van behind her, who could see over the Pontiac because he was in a van, and had no trouble seeing the Cadillac, beginning from two blocks away, speeding down the median and turning right to reenter the eastbound lanes, seemingly on a course of collision with them. In fact, the van driver prepared to grip the steering wheel in apparent anticipation of a collision. (R.II. 319)

Johnson would have assumed that the Pontiac would not make a lefthand turn because the Cadillac was only 50 feet away driving very fast in the median lane and proceeding to make a righthand turn to re-enter the eastbound lanes, which was traffic that the Pontiac would have to cross. (R.11.304.08, 322)

Because Johnson would not have expected that the Pontiac would proceed with its turn under those circumstances, Johnson's driving did not create a strong probability of death or great bodily harm. In addition, there was evidence that Johnson attempted to avoid the collision, and that attempt was evidence that he did not know that his acts created a strong probability of collision by failing to act when the Pontiac turned his path. The collision was not head on because the right front of Johnson's car was damaged. (R.11.391) In order for the right front of the car to have been damaged, Johnson must have turned his vehicle to the left. The reason for turning to the left must have been to attempt to avoid hitting Pontiac. There must have been insufficient time to avoid hitting the Pontiac completely because the Pontiac began its turn when Johnson was only 50 feet away and because Johnson was traveling about 100 feet per second. (R.11.322) That Johnson did not also attempt to brake in addition to turning in the opposite direction can only be attributable to mere negligence. Furthermore, there was no evidence that Johnson would have been able to avoid the collision had he braked in the one-half second he had to react. As Johnson attempted to avoid the collision, although ineffectively, the state did not prove beyond a reasonable doubt that Johnson knew that his acts when he encountered the Pontiac created a strong probability of death or great bodily harm.

. CONTINUED EXB

Exhibit
B

In his amended petition, Earl Johnson alleges that he was denied a fair trial as a result of his lawyer's failure to properly cross-examine and elicit the prior inconsistent testimony Knolmayer gave at a deposition (C.II.156) These allegations are supported by the record and made a substantial showing of a constitutional violation.

Also this case, Johnson's theory was that he was reckless in causing the deaths in this case. See Order at page 8-9. The States theory was that a finding of First Degree Murder was appropriate where Johnson knew or should have known that his driving would have caused great bodily harm or death. See Order at 10.

At his bench trial, the State argued that Johnson was in a high-speed chase because Johnson had "ignored the speed limits, railroad crossing gates and stop lights. (SC.II. 153) This argument supported the States theory. And, the trial court found that Johnson had gotten behind the wheel of a car ... and had the attitude ... to take no prisoners and continued on this driving." (SC.II. 154) Thus, the trial court was under the impression that a high-speed chase had ensued in this case. Further, because the trial court specifically commented on when Johnson "got behind the wheel of a car," it appears that the trial court found that the high speed chase ensued from the beginning of the police pursuit; i.e., where Johnson initially drove away from the bank.

The allegations of the amended petition, however, show that counsel failed to elicit Knolmayer's version of the events that he gave at his deposition, which would have shown that Johnson drove away from the bank cautiously. (SC.II. 157) This evidence, had it been elicited, would have cast doubt on the States case (that Johnson drove with the intent to harm) and would not have supported the trial courts stated findings (that Johnson got behind the wheel of a car with a take no prisoners attitude.) For this reason,

it was objectively unreasonable not to elicit the deposition testimony that Knolmayer gave because the deposition version would have supported his case that Johnson was merely reckless. And, thus trial counsel's failure to confront Knolmayer with this deposition testimony at Johnson's Bench trial version was highly prejudicial to Johnson's case.

There could be no strategic reason for trial counsel not to present to the trial court the version of the events that Knolmayer gave at his deposition. The deposition version does not show that a high-speed chase had ensured from the beginning of the police pursuit and contradicted Knolmayer's version at the bench trial. It shows practically the opposite. The deposition version shows that the police pursuit began slowly down 111th street, and continued slowly on Ridgeland past the railroad tracks at the Southwest Highway. This version by Knolmayer was completely inconsistent with the version Knolmayer gave at the bench trial. Notably, the deposition version does not show that Johnson "ignored the speed limits, railroad crossing gates and, stop lights." (SC.II.153) More importantly, too, the deposition version would not support the trial court's findings that Johnson "had gotten behind the wheel of a car... and had the attitude.. to take no prisoners and continues on this driving".

Prejudice is readily apparent. It was the state's burden to show Johnson's mental state, the state's key witness was officer Knolmayer who initially and solely observed Johnson's driving on 111th street and on Ridgeland before the tracks at the Southwest Highway. Yet, while Knolmayer's observation at the bench trial might perhaps support a finding of first degree murder, his inconsistent deposition testimony calls into question the accuracy of that bench trial testimony. And because the deposition testimony certainly supports a finding that Johnson was merely reckless, trial counsel failure to elicit that version prejudices Mr. Johnson.